**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW PERRONG,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **VICTORY PHONES LLC** | : | |
| *d/b/a* **PUBLIC OPINION RESEARCH,** | : | **NO. 20-5317** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                    FEBRUARY 11, 2021

Electioneering is big business. The weeks leading up to an election can mean an overstuffed mailbox with political flyers. Adding to the frenetic activity, phones "ring of the hook"[1] with calls placed by campaigns and supporters stumping for support (and funds), and pollsters seeking to take the call recipient's political temperature. The frequency of those calls, however, is supposedly tempered in part by the Telephone Consumer Protection Act of 1991. 47 U.S.C. § 227. This Act governs automated calling, and limits autodialed and prerecorded voice calls and texts. It also authorizes a private cause of action to people who receive calls that violate the Act, including statutory damages of $500 for each violation. *Id.* § 227(b)(3).

Andrew Perrong, who has gained some apparent notoriety within the TCPA bar as the "robo-call cop,"[2] has sued Victory Phones LLC alleging violations of the TCPA. Mr. Perrong alleges that he received a pre-recorded call from Victory Phones on at least one occasion, two weeks before the November 2020 election. Doc. No. 5 (Am. Compl) ¶ 21.

---

[1]      This expression refers to the days of phones in a style now seen only in "old movies."

[2]      In this district alone, Mr. Perrong has filed at least nine separate cases. His name is synonymous with TCPA litigation given his prolific filings. Christian Hetrick, *Meet the Robocall Avenger: Andrew Perrong, 21, Sues Those Pesky Callers For Cash*, Phila. Inquirer (Nov. 2, 2018), https://www.inquirer.com/philly/business/robocall-lawsuits-verizon-citibank-andrew-perrong-20181102.html (last visited Feb. 8, 2021).

Victory Phones moves to dismiss the Amended Complaint and advances two arguments in support. First, Victory Phones argues that Mr. Perrong does not allege the nature of the number—whether it is a landline residential number or a cellphone. Second, as a political polling company, Victory Phones claims that it is exempted from the TCPA's telemarketing prohibition.

For the reasons that follow, the Court grants Victory Phones' motion without prejudice and with leave to Mr. Perrong to file an amended complaint.

## BACKGROUND AND PROCEDURAL HISTORY

Mr. Perrong alleges he received a pre-recorded call from Victory Phones in October 2020. The call began with a recorded message stating that the caller was conducting a survey on behalf of "Public Opinion Research." Mr. Perrong was then instructed to press certain keys in response to pre-recorded questions. At the end of the call, a pre-recorded message stated that the call was conducted by "Public Opinion Research" and provided a callback number. Am. Compl. ¶¶ 21-23.

The Amended Complaint alleges a single-count violation of the TCPA for violating the Act's prohibition against automated calling and prerecorded voice calls to any cell phone or any service for which the recipient is charged for the call.

Mr. Perrong alleges that his phone number is charged for each call placed to him on the line on which the call came to him. *Id.* ¶¶ 18-20. He further alleges that he was "temporarily deprived" of the use of his phone during the call and that "his privacy was improperly invaded." *Id.* ¶ 26. The Amended Complaint does not state whether his phone is a cell phone, landline, or otherwise.

Mr. Perrong also seeks to certify a class of persons who likewise received similar allegedly violative calls from Victory Phones.

2

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To provide defendants with fair notice, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts in the Third Circuit conduct a two-part analysis. First, any legal conclusions are separated from the well-pleaded factual allegations and are disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines whether the facts alleged establish a plausible claim for relief. *Id.* at 211.

At the pleading stage, the court accepts "all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 210. If the court can only infer "the mere possibility of misconduct," the complaint has failed to show an entitlement to relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court need not ignore or discount reality. Nor must the Court "accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000).

## DISCUSSION

The TCPA broadly restricts telemarketing calls and use of automatic phone dialing systems. Because it is a consumer protection statute, *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013), the Court must interpret it liberally in favor of consumers. *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 997 (3d Cir. 2011).

Victory Phones moves to dismiss the Amended Complaint with prejudice for conspicuously omitting facts about the nature of the phone number dialed. 47 U.S.C. §§ 227(b)(1)(A). Even assuming that the nature of the number was properly pled, Victory Phones

3

next argues that a content-based carve-out in the implementing regulations for polling and market research services exculpates the conduct.

The Court considers each argument in turn.

## I.     Whether Mr. Perrong Pleads The Nature of His Telephone Line

The TCPA prohibits calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a "cellular telephone service . . . or any service for which the called party is charged for the call . . . ." 47 U.S.C. §§ 227(b)(1)(A).

Victory Phones first argues that the Amended Complaint should be dismissed because Mr. Perrong fails to allege that his telephone constitutes "any service for which the called party is charged for the call."    Such allegations are necessary to state a claim under 47 U.S.C. § 227(b)(1)(A)(iii).

The Amended Complaint alleges that Mr. Perrong's phone number is charged for each call it receives, including a ring charge and a charge per minute. Am. Compl. ¶¶ 18-20.  The question is whether these bare-bones allegations are enough to withstand dismissal.   The Amended Complaint does not allege whether Mr. Perrong's number is residential or cellular.  In his response to the motion, Mr. Perrong states for the first time that he has a VoIP telephone service—"voice over internet protocol." Doc. No. 21 at 9.  VoIP technology allows for voice calls placed over a broadband Internet connection, rather than by using regular telephone line.

Based on his response, the Court understands Mr. Perrong to attempt to allege that VoIP service falls into the TCPA's catch-all "any service for which the called party is charged" provision.    Some courts faced with this question have treated VoIP services as protected technology under the TCPA. *See, e.g.*, *Jones v. Experian Info. Sols.*, No. CV 14-10218-GAO, 2016 WL 3945094, at *7 (D. Mass. July 19, 2016) (collecting cases).  But Mr. Perrong does not allege anything relating to the type of telephone service he has in his complaint.  As set forth

4

below, whether he has a residential or cellular line or otherwise—including VoIP—is dispositive to whether his claim can survive a motion to dismiss.

Mr. Perrong responds that all that is required to state a TCPA claim is that (1) the defendant called a "protected number", (2) using an automatic telephone dialing system, (3) without the recipient's prior express consent. Doc. No. 21 at 8. The problem, however, is that Mr. Perrong does not plead that he has such a "protected number." He vaguely asserts he has *a* telephone number. Am. Compl. ¶ 17.

So, this seems to be an instance of pleading by omission.[3] Mr. Perrong does not state that he has a residential landline, leading to the inference that to state a claim he must either have a cellular line or fall under the "catch-all provision."[4] But it is his burden to allege sufficient facts to state a claim, especially when pre-recorded and autodialed calls to cell phones are governed by a more restrictive provision in the Act and are not exempted from the content-based restrictions in 47 C.F.R. § 64.1200(a)(3).

Because the Court cannot divine from his pleading, Mr. Perrong's type of telephone service, it finds that he does not plead enough to state a claim for a violation under 47 U.S.C. § 227(b)(1)(A)(iii).

## II.    Whether Victory Phones' Conduct is Exempted from the TCPA

Victory Phones next argues that it is generally exempted from the Act's prohibitions because it is involved in political or survey calling. In general, a call using a pre-recorded or artificial voice without the recipient's prior written consent runs afoul of the Act. However, the

---

[3]     Victory Phones plans to "quickly demonstrate that the call was placed to a telephone number assigned to a residential line," and, because that would remove the call from the reach of the Act, intends to seek Rule 11 sanctions. Doc. No. 20-1 at 11.

[4]     Under the Act, Mr. Perrong could state a claim if he received a call to a number assigned to a paging service, specialized mobile radio service, or other radio common carrier service but neither party suggests that is the technology being used here.

Federal Communications Commission, the agency responsible for issuing rules and regulations interpreting the TCPA, has promulgated rules that exempt certain types of calls based on the content or type of caller. 47 U.S.C. §§ 227(b)(1)(B). Prior express written consent is *not* necessary when a call (1) is made "to any residential line using an artificial or prerecorded voice" and (2) is "not made for a commercial purpose." 47 C.F.R. § 64.1200(a)(3)(ii).

So, this exemption is applicable only if the number in question is a residential number—rather than a cell phone. As the Third Circuit Court of Appeals recognized, there are no content-based exemptions that apply "to autodialed calls made to cellular phones." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013).

The content-based distinction between cell phones and residential lines is not only preserved in the statutory text and case law but also in recent FCC guidance. The FCC reiterated that political campaign related pre-recorded messages and autodialed calls to *residential* phones are *not* prohibited under the Act (provided that the caller complies with the Act's identification requirements). FCC Enforcement Advisory, *Tel. Consumer Prot. Act Robocall & Text Rules— Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1944 (2016). However, the Act still broadly prohibits prerecorded messages and autodialed calls to cell phones and other mobile services without prior express consent, even when sent by non-profits and political campaign-related organizations. *Id.*

Victory Phones argues it satisfies the elements for the exemption to bar a TCPA claim. First, it is not disputed that the call placed to Mr. Perrong's phone used an artificial or prerecorded voice. Second, Victory Phones contends that the number at issue is a landline or "residential" line.[5] Third, the Amended Complaint does not dispute the nature of Victory Phones' business.

---

[5]     As discussed above, this is an assumption based on omissions in the Amended Complaint. In his response, Mr. Perrong now claims he has a VoIP service, but this fact is conspicuously absent from the Amended Complaint.

Indeed, it alleges that Victory Phones is "in the business of conducting polling and providing associated research services." Am. Compl. ¶ 13.

A point of clarification, however, is in order. Victory Phones also relies on recent case law from the Third Circuit Court of Appeals for the proposition that *any* political polling call placed to *any* phone does not violate the Act. Victory Phones stretches the appellate court's words beyond their meaning. In dicta, the court acknowledged that a "marketing firm making calls to conduct pure market research, and a pollster conducting a political poll by telephone, do not violate TCPA's telemarketing prohibition." *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 134 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 563, 205 L. Ed. 2d 358 (2019). Victory Phones seizes upon this language seemingly to wipe away the distinction between non-commercial calls placed to landlines and cell phones. Not so.

To be sure, the FCC Commissioner's 1992 report and order on which the *Optum* court relies does not discuss the difference between landline and cellphone use for purposes of the non-commercial exemption. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 (1992). But this can hardly be a surprise. At the time the report was issued, widespread cell phone use (and attendant frustrations with spam calls) was not yet an incessant part of daily (and nightly) life. Moreover, read in context, the *Optum* court referenced the non-commercial call exemption in passing as support for its concern about "possible overreaching of the application of the TCPA." *Optum Inc.*, 925 F.3d at 134. The Third Circuit Court of Appeals did not rewrite the TCPA to expand the content-based exemptions that apply to landlines to also now reach cell phones. Nor was the difference in treatment between residential and cell lines at issue before the Third Circuit or relevant to resolution of the issues in *Optum.* To accept Victory Phones' interpretation would require an interpretation of the TCPA that reads out language in the implementing regulations. The Court declines to do so.

7

The viability of the Amended Complaint thus hinges on whether the number dialed is a residential line or cellular.  Victory Phones assumes it is the former.  Doc. No. 20-1 at 13.  The Amended Complaint does not plead either way.  But because the Amended Complaint alleges that Victory Phones is engaged in polling and research services—thereby potentially implicating the content-based exemption—the Amended Complaint is silent as to an element of its claim.

So, the Court cannot find that Mr. Perrong has stated a claim.  When, as here, a complaint is subject to a Rule 12(b)(6) dismissal, the Court should permit a curative amendment unless it would be futile or inequitable.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  In his response in opposition to the Motion, Mr. Perrong requests leave to amend his complaint a second time.[6] As set forth in this Memorandum, the Court will grant him leave to file an amended complaint to address the nature of his telephone.  Fed. R. Civ. P. 15(a).

### CONCLUSION

For the reasons set out in this Memorandum, the Court grants Victory Phones' motion to dismiss without prejudice but with leave to Mr. Perrong to amend the First Amended Complaint.  An appropriate order follows.

BY THE COURT:

**GENE E. K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

---

[6]     Mr. Perrong initiated this action against a John Doe defendant.  Doc. No. 1.  The Court granted him leave to serve a third-party subpoena to identify the legal entity on whose behalf the calls were placed.  Doc. No. 4.  Mr. Perrong then identified Victory Phones LLC and amended the complaint to name the intended specific defendant.  Doc. No. 5.