## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW PERRONG, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| VICTORY PHONES LLC, | : | **No. 20-5317** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                JULY 15, 2021

Concerned by the proliferation of unsolicited telemarketing and auto-dialed phone calls, Congress passed the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Among other things, the Act prohibits certain practices that Congress found to be a nuisance and invasion of privacy and directs the Federal Communications Commission to adopt implementing regulations. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012). The Act also includes a private-enforcement provision, whereby an aggrieved party can recover statutory damages of $500 for each call received that violates the Act. Since the statute's enactment 30 years ago, the technological landscape of the telephone industry has evolved. But the TCPA largely has not.

"When a text can be applied as written, a court ought not revise it by declaring the legislative decision 'absurd.'" *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012). Sometimes, the divergence between technology and text may mean that the latter seems ill-equipped to address the former. Other times, a party may simply be dissatisfied by the application of a statute to a particular issue. That is the case here. For the reasons that follow, the Court denies Victory Phones' motion to dismiss.

### BACKGROUND AND PROCEDURAL HISTORY

Andrew Perrong alleges that he received a pre-recorded call from Victory Phones last October. The pre-recorded message stated that the call was for a survey on behalf of "Public

1

Opinion Research." Mr. Perrong was then instructed to press certain keys in response to certain questions. The call ended by repeating that the call was "conducted by 'Public Opinion Research'" and provided a callback number. Mr. Perrong alleges that this single pre-recorded call violates TCPA's prohibition on calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to "any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A). He further alleges that this unsolicited call "temporarily deprived" him the use of his phone and that "his privacy was improperly invaded." Doc. No. 24 (2d Am. Compl.) ¶ 34.

The Court granted Victory Phones' first motion to dismiss with leave for Mr. Perrong to allege that his telephone constitutes "any service for which the called party is charged for the call."[1] The Second Amended Complaint alleges that Mr. Perrong used a VoIP telephone service—"voice over internet protocol"—which includes a "ring charge" for every call that is placed to the number (even if the call is not answered) and a per-minute charge for each minute of talk time. *Id.* ¶¶ 25-26. He alleges that the VoIP service charged him for the subject call. VoIP technology allows for voice calls placed over a broadband Internet connection, rather than by using a traditional analog telephone line. To that end, Mr. Perrong states that "[t]his number is used for personal, household purposes, but is not a traditional copper residential landline nor a cell phone." Doc. No. 30-1 (Perrong Decl. ¶ 4).

Victory Phones again moves to dismiss on the grounds that Mr. Perrong is a "serial plaintiff" who lacks standing and that the implementing regulations of the TCPA bar his claim. The Court heard oral argument, following which the Court invited the parties to file supplemental briefs.

---

[1]   *Perrong v. Victory Phones LLC*, --- F. Supp. 3d --- , No. CV 20-5317, 2021 WL 516268 (E.D. Pa. Feb. 11, 2021).

## LEGAL STANDARDS

### I.      Rule 12(b)(1)

A challenge to subject-matter jurisdiction may be raised at any time during the litigation. *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018).  When a party questions the court's power to hear the case, the court must determine whether the challenge is a facial or factual attack.  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).

A facial attack requires the court to consider "a claim on its face."  It "asserts that it is insufficient to invoke subject matter jurisdiction . . . because, for example, . . . there is no indication of a diversity of citizenship among the parties[.]"  *Id.* at 358.  When a defendant advances a facial attack, the "Court must consider the allegations of the complaint as true."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  For that reason, the standard to evaluate a 12(b)(1) facial attack is similar to that used for evaluating a 12(b)(6) motion.

A factual attack, on the other hand, challenges the allegations underlying the plaintiff's assertion of jurisdiction.  This can be through filing an answer or "otherwise presenting competing facts."  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  Accordingly, the Court may consider evidence outside of the pleadings.  Unlike a facial attack, the plaintiff has the burden to establish that subject matter jurisdiction does exist.  *Mortensen*, 549 F.2d at 891.

### II.      Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  To provide defendants with fair notice, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts in the Third Circuit conduct a two-part analysis.  First, any legal conclusions are separated from the well-pleaded factual allegations and are disregarded.  *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines whether the facts alleged establish a plausible claim for relief. *Id.* at 211.

At the pleading stage, the court accepts "all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 210. If the court can only infer "the mere possibility of misconduct," the complaint has failed to show an entitlement to relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court need not ignore or discount reality. Nor must the Court "accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000).

## DISCUSSION

Victory Phones advances two arguments as to why dismissal is the proper course. First, it argues that Mr. Perrong lacks standing because he has not suffered an injury-in-fact and because his status as a "professional plaintiff" takes him outside of the TCPA's zone of interests. Second, it reiterates its argument from the first motion to dismiss that its calls to residential phone lines are exempted from TCPA liability. So, it maintains that Mr. Perrong fails to state a claim.

## I.   Whether Mr. Perrong Has Standing

Victor Phones argues that Mr. Perrong lacks both constitutional and "prudential" standing because it claims that he is not part of the category of people that the TCPA is designed to protect. Insofar as Victory Phones challenges this Court's jurisdiction to adjudicate the case, Mr. Perrong satisfies the minimum requirements. As to the "prudential" standing argument, the Court construes it as a challenge to his statutory standing and rejects it as premature at best.

### A.   Constitutional Standing

To have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by

4

a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish an "injury in fact," a plaintiff must show that he has suffered an "invasion of a legally protected interest" that is "actual or imminent" and "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The requirement of a concrete injury does not fall away simply because the plaintiff asserts a statutory violation. *Spokeo*, 136 S. Ct. at 1549. But once a plaintiff has satisfied those three elements, the action "presents a case or controversy that is properly within federal courts' Article III jurisdiction." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

The Third Circuit Court of Appeals has made clear that a TCPA plaintiff pleads a "concrete" injury when she "sues under a statute alleging the very injury the statute is intended to prevent" and there exists a "close relationship" between the statutory claim and a cause of action "traditionally" recognized in "English or American courts." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017). The appellate court in *Susinno* first found that the plaintiff's "nuisance and invasion of privacy" complaint which arose from a single pre-recorded telephone call and voicemail was "prototypical" of the sort proscribed by the TCPA. Moreover, the court found that, in enacting the TCPA to address unsolicited calls, Congress merely "elevated a harm" that was of a similar flavor to privacy and nuisance causes of action. *Id.* at 352. So, Ms. Susinno's single call was enough to allege a concrete harm sufficient to confer standing.

With the benefit of the *Susinno* framework, Mr. Perrong meets the minimum constitutional standing requirement. He alleges that he received an unsolicited pre-recorded call from Victory Phones. The resulting injury—nuisance and temporary deprivation of his phone—is cognizable for purposes of Article III standing.

Victory Phones contends, however, that Mr. Perrong has not suffered an "injury in fact" because the subject phone call is exempt from the types of calls that give rise to TCPA liability.

5

Under Victory Phone's theory, Mr. Perrong's legally protected interests were not violated so, at most, he asserts a "generalized grievance" against telemarketers. Victory Phones' "constitutional" standing argument, however, is not a challenge to this Court's jurisdiction and constitutional power to adjudicate this case. *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642-43 (2002).

As the Supreme Court made clear in *Lexmark*, "other requirements, whether prudential or 'tied to a particular statute,' do not affect [the Court's] constitutional jurisdiction." *In re Wilton Armetale, Inc.*, 968 F.3d 273, 281 (3d Cir. 2020) (distinguishing constitutional standing from the statutory requirements of bankruptcy "standing"). Rather, whether the subject phone call falls into a content-based exemption promulgated by the FCC is properly a merits question—indeed, one that Victory Phones raises on a Rule 12(b)(6) challenge and which the Court will consider there. *See* Section II, *infra*; *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 & n.3 (3d Cir. 2015). To hold otherwise would potentially give constitutional stature to almost every merits inquiry and require an Article III standing analysis to determine whether a provision in the TCPA applies or not. Mr. Perrong has met the three elements of constitutional standing, although the question remains whether he has a claim on the merits.

### B. Statutory Standing[2]

Separate from the jurisdictional inquiry, a plaintiff must also contend with the presumption that a "statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Leyse*, 804 F.3d at 320 (quoting *Lexmark*, 572 U.S. at

---

[2]    Victory Phones argues that Mr. Perrong lacks "prudential standing" because he supposedly does not come within the statute's zone of interests. "Prudential standing" is something of a "misnomer" in this context. *Lexmark*, 572 U.S. at 127 ("Whether a plaintiff comes within the 'zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim."). Accordingly, despite Victory Phones' nomenclature, the Court considers whether Mr. Perrong has statutory standing.

129).  Victory Phones argues that Mr. Perrong has so frequently alleged violations of the TCPA that he has turned himself into something of a professional plaintiff and appears to welcome unsolicited calls from which he then launches litigation.

The question is whether Mr. Perrong falls within the class of plaintiffs whom Congress has authorized can bring a suit under the TCPA.  The TCPA does not hide its intended purpose to vindicate a plaintiff's privacy interests.  TCPA, § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings).  It was enacted to address the "proliferation of automated telemarketing calls . . . to private residences," which Congress found to constitute a nuisance and invasion of privacy.  *Leyse*, 804 F.3d at 322; *see Mims*, 565 U.S. at 372.  To that end, the TCPA prohibits calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned, among other things, to a "any service for which the called party is charged for the call . . . ."  47 U.S.C. § 227(b)(1)(A).  And it authorizes a private cause of action to people who receive calls that violate the Act, including statutory damages of $500 for each violation.  *Id.* § 227(b)(3).

In determining whether a plaintiff's injury comes within the acceptable 'zone,' courts do not question whether Congress *should* have authorized the suit.  The question is whether Congress did authorize it.  *Lexmark*, 572 U.S. at 128.  Victory Phones contends that Mr. Perrong's economic motivations—inferred from his prolific filings—removes him from the statute's zone of interests.  Nothing in the text of the Act supports this argument.

Implicit in Defendant's statutory standing argument is the notion that expertise in plaintiff-side TCPA litigation is necessarily bad—bad enough to rob a plaintiff of his *future* ability to bring cases.  "Nothing in the Constitution, though, requires a plaintiff to be a naïf.  Litigation is not college athletics:  there is no 'amateurs only' rule."  *Cunningham v. Rapid Response Monitoring*

*Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017).[3]  The Court declines to give Victory

Phones a "free pass" simply because they robo-dialed a caller aware of his rights under the TCPA.

*See, e.g.*, *Evans v. Nat'l Auto Div., L.L.C.*, No. CV 15-8714, 2016 WL 4770033, at *3 (D.N.J.

Sept. 13, 2016); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017)

(Although plaintiff has "telephone answering and recording equipment which is more

sophisticated than that of the average consumer . . . [t]his does not deprive the plaintiff of standing

any more than the purchase of a burglar alarm would indicate that the homeowner wanted her

house to be broken into.").

The Court declines, at this time, to find that Mr. Perrong lacks the interests that the TCPA

is designed to protect.  So doing, it rejects Victory Phones' argument—as has become routine for

defendants in TCPA suits to advance—that this case should adopt the reasoning of the Western

District of Pennsylvania in *Stoops v. Wells Fargo Bank, N.A.*  197 F. Supp. 3d 782 (W.D. Pa.

2016).  The plaintiff in *Stoops* was found to lack statutory standing because her privacy interests

were not violated when defendants called her.  She specifically testified that she purchased at least

35 cell phones and cell phone numbers with prepaid minutes for the express purpose of filing

TCPA suits "as a business."  *Id.* at 798-800.  There are a few critical distinctions between *Stoops*

and this case that give this Court pause.

The court in *Stoops* held that the plaintiff lacked statutory standing at the summary

judgment stage and with the benefit of discovery.  There was no doubt about Ms. Stoops' admitted

intentions.  Here, by contrast, Mr. Perrong's declaration submitted with his response to the motion

states that he does "not maintain any telephone numbers for the purpose of bringing lawsuits."

---

[3]      Leaving aside the etymology of the word "amateur"—"one who loves"—the Supreme Court's
recent decision in *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141 (2021), blurs the line between
amateurism and professionalism somewhat.    *Amateur*, Merriam-Webster, https://www.merriam-
webster.com/dictionary/amateur (last visited July 14, 2021).

Doc. No. 30-1 ¶ 18.  And the parties have not proceeded to summary judgment, much less engaged in discovery.

At oral argument, Victory Phones emphasized that it was making a factual attack on Mr. Perrong's standing, which permits the Court to consider evidence outside of the pleadings, including his prior cases and supporting documents filed in those. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  On this basis, Victory Phones contends that the Court can find—at this early stage—that Mr. Perrong lacks standing without any discovery.

Even considering the raft of lawsuits, the Court is not persuaded by Victory Phones' "entrapment" argument.[4]  Victory Phones highlights situations in which Mr. Perrong has sought additional communications in order to learn the identity of the offending caller.  But these additional communications follow his first suffering an injury cognizable under the TCPA.  For TCPA purposes, the point is that the caller placed the offending call in the first place.  And courts, both within this Circuit and outside, have rejected the argument that a plaintiff who poses as an interested consumer negates standing under the TCPA.  *See, e.g.*, *Abramson v. Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 4101857, at *6 (W.D. Pa. July 31, 2018), *report and recommendation adopted*, No. CV 18-479, 2018 WL 4095538 (W.D. Pa. Aug. 28, 2018); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017).  Assuming that Mr. Perrong has previously sought additional information from a telemarketer in order to identify it, such conduct is merely part of *enforcing* the TCPA.

---

[4]  Defendant cites to some of Mr. Perrong's "outlandish schemes" in its motion to dismiss.  On one occasion, Defendant suggests that Mr. Perrong pretended to place two orders for Viagra in order to then invite further contact with the caller.  The complaint in that case, however, shows that Mr. Perrong had initially received the auto-dialed prerecorded solicitation calls—which formed the basis of his complaint. The purchase order was designed to reveal defendant's identity so that he could properly file a complaint. Complaint, *Perrong v. Voisel LLC et al.*, 2:18-cv-2227-GAM (E.D. Pa. filed May 29, 2018).

Moreover, *Stoops* is the narrow exception to TCPA statutory standing.[5]  Courts have declined to extend its holding when the phone number was not procured for the express purpose of receiving calls on which to base future TCPA litigation. *See e.g.*, *Evans*, 2016 WL 4770033, at *3 ("*Stoops* is distinguishable from this case on the grounds that the plaintiff in that case acknowledged that she only purchased cell phones in order to file TCPA lawsuits."); *Cunningham v. Mark D. Guidubaldi & Assocs., LLC*, No. 418CV00118ALMCAN, 2019 WL 1119365, at *4 (E.D. Tex. Jan. 11, 2019), *report and recommendation adopted*, No. 4:18-CV-118, 2019 WL 1117915 (E.D. Tex. Mar. 11, 2019) (Plaintiff "expressly acknowledged that she only purchased the cell phones at issue for the purpose of receiving automated telemarketing calls and subsequently filing TCPA suits.").

The injury which confers statutory standing exists regardless of the fact that Mr. Perrong's name has previously appeared on the left side of the "v."  His decision to pursue his rights under the TCPA "should not negate otherwise privacy interests simply because [he] may be motivated to sue by the TCPA's damages provisions." *Abramson v. Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 4101857, at *5 (W.D. Pa. July 31, 2018), *report and recommendation adopted*, No. CV 18-479, 2018 WL 4095538 (W.D. Pa. Aug. 28, 2018).  Moreover, because the TCPA "is a remedial statute, it should be construed to benefit consumers." *Leyse*, 804 F.3d at 327.  Victory Phones' argument finds no support in the text or spirit of the statute.  At the motion to dismiss stage, Mr. Perrong's allegations fall within the zone of interests protected by the TCPA.

---

[5]     In its reply, Victory Phones relied on a recent District of Nevada case endorsing the reasoning in *Stoops*. *Garcia v. Credit One Bank, N.A.*, No. 218CV191JCMEJY, 2020 WL 4431679 (D. Nev. July 31, 2020). But *Garcia*—like *Stoops*—was at the motion for summary judgment stage. And, the "undisputed material facts" showed that Garcia "kept re-purchasing pre-paid phone minutes, apparently in order to keep receiving unwanted calls." *Id.* at *3.  Neither of these arguably dispositive characteristics are present in this case.

## II.   Whether Mr. Perrong States a Claim

Victory Phones next argues that the Second Amended Complaint should be dismissed because it maintains that the subject call is exempted from the TCPA's prohibitions. The Federal Communications Commission has promulgated rules that exempt certain types of calls based on the content or type of caller. 47 U.S.C. § 227(b)(1)(B). Prior express written consent is *not* necessary when a call (1) is made "to any residential line using an artificial or prerecorded voice" and (2) is "not made for a commercial purpose." 47 C.F.R. § 64.1200(a)(3)(ii). Because Victory Phones argues that the subject call was placed to a "residential line" and the call was for non-commercial political or survey purpose, Mr. Perrong cannot maintain a TCPA claim.

Following the dismissal of his first amended complaint, Mr. Perrong now alleges that the number dialed is "assigned to a VoIP service" and that he is charged for each call that is transmitted through the VoIP service. 2d Am. Compl. ¶¶ 22-23. Because he incurred a charge for the subject call, separate and apart from whatever overall service fee for the VoIP, he responds that his claim falls within the "catch-all" provision of the TCPA. 47 U.S.C. §§ 227(b)(1)(A).

The Court begins, as it must, with the plain text of the statute and "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *U.S. v. Albertini*, 472 U.S. 675, 680 (1985); *see also Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 186 (3d Cir. 2021). When "the statutory language provides a clear answer, [the analysis] ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

As a threshold matter, the Court finds that the operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and pre-recorded voice calls to a variety of telephone numbers. Relevant here, § 227(b)(1)(A)(iii) prohibits calls to numbers "assigned" to paging services, cell phones, radio services, and "any service for which the party is

charged for a call." There are two textual clues that lead the Court to find that § 227(b)(1)(B) does not bar Mr. Perrong's claim as Victory Phones suggests.

*First*, Mr. Perrong claims that his VoIP service charged him for the subject call. To be sure, one can purchase an unlimited call or flat fee plan that uses a VoIP service. In that case, a call placed to a telephone number by way of a VoIP service would *not* incur a charge-per call. So, it would not be subject to the call-charged provision and a called party would not be able to take advantage of subsection 227(b)(1)(A)(iii). *See, e.g., Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563 (W.D. Pa. 2017), *appeal dismissed*, 2017 WL 7135432 (3d Cir. 2017) (granting summary judgment to caller when evidence revealed that Google VoIP service was free so plaintiff did not use a service "for which he was charged for a call").

But that is not the type of fee structure Mr. Perrong alleges he has. His VoIP service incurs a charge (however miniscule) per call—which he then bears. And it is that economic loss (to say nothing of the associated annoyance) that the TCPA unambiguously seeks to rectify. The TCPA does not contain a 'de minimis' charge below which a plaintiff cannot state a claim. So, any charge—even the fractional $0.017 Mr. Perrong alleges he was charged for the subject call— suffices. 2d Am. Compl. ¶ 33.

*Second*, § 227(b)(1)(A)(iii) and § 227(b)(1)(B) refer, respectively, to telephone "numbers" that are "assigned" and to "residential telephone line[s]." VoIP, as its name suggests, is an Internet-based service. When a subscriber signs up for a VoIP service, he is assigned a VoIP phone number. So, Mr. Perrong alleges that his number "is assigned" to a VOIP telephone service. *Id.* ¶¶ 22-23. He did not plead that the subject number was associated with a physical traditional telephone line, as would seem to implicate the content-based exemptions in § 227(b)(1)(B).

Prior similar decisions of courts within this Circuit and outside support the Court's analysis. There is a growing, albeit limited, body of case law addressing the impact of a VoIP

intermediary connection on a receiving telephone line. *Rivero v. Am.'s Recovery Sols., LLC*, No. 13 CV 3359 (ENV)(LB), 2015 WL 13731356, at *3 (E.D.N.Y. Nov. 30, 2015), *report and recommendation adopted*, No. 13CIV3359ENVLB, 2016 WL 740274 (E.D.N.Y. Feb. 24, 2016) (noting there is "little guidance in the Second Circuit" on this issue). The prevailing view is that a plaintiff has a viable claim under § 227(b)(1)(A)(iii) provided that plaintiff incurs a charge per call. *See, e.g., Klein*, 256 F. Supp. 3d at 581; *Baemmert v. Credit One Bank, N.A.*, 271 F. Supp. 3d 1043, 1050 (W.D. Wis. 2017); *Jones v. Experian Info. Sols.*, No. CV 14-10218-GAO, 2016 WL 3945094, at *7 (D. Mass. July 19, 2016); *Tel. Sci. Corp. v. Trading Advantage, LLC*, No. 14 C 4369, 2015 WL 672266, at *1 (N.D. Ill. Feb. 17, 2015); *Lynn v. Monarch Recovery Mgmt., Inc*, 953 F. Supp. 2d 612, 616-17 (D. Md. 2013), *on reconsideration in part*, 953 F. Supp. 2d 612 (D. Md. 2013), *and aff'd*, 586 F. App'x 103 (4th Cir. 2014), *as amended* (Oct. 17, 2014).

Moreover, the Court is mindful of Congress' intent in passing a remedial *consumer* protection statute in light of Victory Phones' attempt to cabin its liability. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). When interpreting the Act, the Court must construe the language "broadly to effect its purpose." *Lesher v. Law Offs. of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011). To the extent that the parties propose equally plausible interpretations, a statutory "tie" goes to the consumer. *Leyse*, 804 F.3d at 327.

Victory Phones argues that the Court must give effect to every clause and word in the statute. The Court does not disagree. However, Victory Phones' suggested interpretation—that § 227(b)(1)(B), the exemption for calls made to "residential"[6] telephone lines governs—reads the words "any service" within the call-charged provision" out of the statute. It argues that holding otherwise—allowing Mr. Perrong's claim to proceed on the basis that he uses a VoIP service—

---

[6]    The TCPA does not define "residential." The Third Circuit Court of Appeals has interpreted residential to refer to landlines and has juxtaposed those physical lines with wireless ones. *Gager*, 727 F.3d at 273 (The residential telephone line section applies "only to autodialed calls made to land-lines.").

would "render meaningless Congress' intent to treat residential telephones" differently from other calls. Doc. No. 26-1 at 27.

At oral argument, Victory Phones maintained that the relevant technology has eclipsed the law. That may well be the case. But the Court does not then follow Victory Phones' argument that the Court must then ignore intermediary VoIP technology even if it eventually forwards a call to a residential line. According to Victory Phones, the FCC's implementing regulations adopting content-based exemptions apply to *all* "residential telephone lines."[7] It maintains that there is no carve out for a residential line that carries a charge per call, despite the FCC's awareness of VoIP and its ability to route to residential lines. But Victory Phones has not cited any *definitive* statement from the FCC that removes services that incur a charge per call from the protections of the call-charged provision.[8] Moreover, even if the Court found the statute silent or ambiguous as a threshold matter, *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), which it does not, the Court is left without a relevant agency statement to which it could theoretically defer in resolving this issue.

Considering the practical implications, Victory Phones advances a not implausible interpretation of the statute. Connecting a VoIP service with a charge-per-call function to a residential telephone line opens the dialer to liability under the call-charged provision. But the Court is not the proper forum to mold the TCPA to better frame the evolving technological

---

[7] To be sure, Victory Phones glosses over the use of "any" to modify "*any* call using any automatic telephone dialing system" to "*any* telephone number assigned to . . . *any* service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

[8] Following oral argument, Victory Phones submitted a brief supplemental position paper. In response to the Court's question at oral argument, Victory Phones again referred to recent guidance issued by the FCC which distinguished between "mobile phones" and "landlines." Doc. No. 40. The Court's point still stands: the guidance cited to is silent as to the effect of a service—VoIP or otherwise—that incurs a charge per call. And, to the extent "landline" is intended to refer to traditional telephone lines connected by cables, Mr. Perrong's phone number would not qualify because it is connected over the Internet. Moreover, the Court's focus is less on the VoIP technology itself and on the fact that the particular service subscribed to here carried a charge per call fee.

landscape. Nor is the Court persuaded by Victory Phones' claim that this is one of the "rare cases" when the Court should set aside the strict language of the statute in favor of the "intention of the drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989). As Victory Phones notes, the statute does reflect Congress' intent to distinguish between cell phones and residential landlines. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with id.* § 227(b)(1)(B). But Congress also intended to pass legislation that addressed the consumer-borne costs from unsolicited phone calls. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7979-80 (Congress' intent "was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate."). Victory Phones essentially asks the Court to cherry-pick the Congressional intent that shields it from liability. That the Court will not do.

### CONCLUSION

For the reasons set out in this Memorandum, the Court denies Victory Phones' motion to dismiss the Second Amended Complaint. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

15