IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of individuals similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>VICTORY PHONES LLC,<br><br>          Defendant. | Case No. 2:20-cv-05317-GEKP |

**PLAINTIFF'S MOTION TO COMPEL**

The parties have a dispute over the following requests and responses:

**Request for Production No. 16:** Please produce all documents containing any of the following information for each outbound calls made utilizing a recorded message sent by you or your vendors: a) the date and time; b) any recorded message; c) the result; d) identifying information for the recipient; and e) any other information stored by the call detail records.

**Interrogatory No. 11:** Describe every call campaign or group of calls sent by you during the class period. Please include in your response the sponsor or payer of the call campaign, whether you authorized the calls at issue, including the ones in this case, the number of calls authorized, and the multiple of calls authorized.

**Response to each (in relevant part):** Victory Phones objects to this interrogatory as overly broad, burdensome, and disproportionate to the needs of the case to the extent that it seeks information from any time period or about any calling campaign other than the time period and calling campaign at issue in Plaintiff's claim.

In short, Plaintiff seeks records of calls to the class and for Victory Phones to identify the client on whose behalf it made the calls to the Plaintiff.

The parties have met and conferred extensively about these issues over the course of the last four months. Counsel met and conferred by telephone on October 22, 2021 as to Victory Phones' initial objection to providing class calling records. On November 4, 2021, the morning a

conference was scheduled with the Court, Victory Phones proceeded to produce only four days worth of calling records to the putative class. The day after the conference with the Court, November 5, 2021, Plaintiff posed three questions to Victory Phones in an effort to narrow the scope of calling records to be produced: 1) the number of prerecorded calls made for the same client the call to the Plaintiff was made for; 2) the number of prerecorded calls made using the same Caller ID as the Caller ID that called the Plaintiff; and 3) the number of calls that identified the caller as "Public Opinion Research." That same day, Plaintiff made another substantial concession to limit Victory Phones' burden. Specifically, Victory Phones has disclosed that it used two systems to make calls throughout the class period, "System A" and "System B." "System A" was taken offline in early 2020, whereas "System B" is still online and in use. Victory Phones has represented that with "System A" being offline, it would require extensive "developer work" as well as support from Victory Phones' staff in order for Victory Phones to obtain that data. In an attempt to reach a compromise, Plaintiff has agreed that Victory Phones need not produce any data from "System A." Victory Phones, however, has still not agreed to produce any call records from its "System B" that is still online and in use.

      After numerous delays, on February 2, 2022, Victory Phones finally provided Supplemental Interrogatory Responses roughly estimating the volume of calls in response to Plaintiff's three inquiries described above. Victory Phones did not provide the actual volume, however, as it claimed that in each instance it would take it hundreds of hours to determine the volume. Based on Victory Phones' representations, the most efficient way to limit the scope of Victory Phones' production is to limit it to prerecorded calls made for the same client as the call to the Plaintiff. In that regard, Victory Phones has estimated that there are roughly 4.8 million such pre-recorded calls on System B but that it would take it 500 hours to inform Plaintiff of the

exact number of calls. Victory Phones has further attempted to shift the burden of responding to this request onto Plaintiff, stating that if Plaintiff's counsel wishes to obtain that information (just the number of calls, to say nothing of producing the actual records), they would have to pay Victory Phones an amount estimated at $43,000 (500 hours at $72 per hour, which comes out to $36,000, plus another $7,000 in unidentified costs). Plaintiff is unwilling to pay Victory Phones to comply with its obligation to provide its own information in discovery, particularly where that information is currently accessible.

With respect to the dispute over identifying the client for whom the calls to the Plaintiff were made, the Plaintiff has already made the concession of only asking for identification of that one client as opposed to all clients. Since Plaintiff is only asking for Victory Phones to disclose the name of one client, there are no more concessions that can be made.

Plaintiff and his counsel need the records of pre-recorded calls made at issue to identify putative class members and an amount of alleged violations for class certification and for trial. Many courts, including this Court, have found "the outbound call list [to be] reasonably calculated to identify the number of recipients of calls made during the class period, which is relevant to Rule 23 requirements[.]" *Frey v. Frontier Util. Northeast Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620, at *5 (E.D. Pa. Apr. 13, 2020) (citation omitted). *See also Gaines v. Law Off. of Patenaude & Felix, APC*, No. 13cv1556-JLS(DHB), 2014 WL 3894348, at *2 (S.D. Cal. June 12, 2014) ("[T]he outbound dial list is relevant to the issue of numerosity and commonality under [Rule 23(a)], and is therefore discoverable").

This information is relevant to both class certification and merits; indeed, this is the crux of the case at trial because from the outbound dial list, it can be determined how many calls were made to offending telephone numbers, which determines liability and damages. For the Plaintiff

to identify class members that may have a claim, he needs to obtain the call records, which will include all of the recipients of those calls, at which point an expert analysis can be performed to identify class members. *See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, Doc. 102 (D. Conn. Dec. 5, 2014) (call records relevant to numerosity, commonality, and typicality because, among other reasons, they assisted experts in determining which phone numbers were tied to cellular phones). *See also Johnson v. Comodo Grp.*, No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *21-22 (D.N.J. Jan. 31, 2020) (certifying a TCPA class action relying on expert witness testimony reviewing calling logs). Here, the Plaintiff, or his expert, will determine which calls were made to cell phone numbers and numbers charged for the call under 47 U.S.C. § 227(b)(1)(A)(iii) in order to prepare the case for class certification and trial.

Victory Phones has only agreed to produce four days worth of calling records. It contends that it would be unduly burdensome to produce the rest of the prerecorded calls it made for the same client and has cited Rule 26(b)(2)(B), arguing the call records are electronically stored information that is "not reasonably accessible because of undue burden or cost." However, this Court has recognized that "[t]he obvious negative corollary of this [Rule 26(b)(2)(B)] is that accessible data must be produced at the cost of the producing party; cost-shifting does not even become a possibility unless there is first a showing of inaccessibility." *Cochran v. Caldera Med., Inc.*, No. 12-5109, 2014 U.S. Dist. LEXIS 55447, at *4 (E.D. Pa. Apr. 22, 2014). "Thus, it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary." *Id.* at *4-5 (citation omitted). Moreover, this Court clarified that "accessible data" includes "active, online data, near-line data, and offline storage/archives," whereas "inaccessible data" is data that must be "restored, de-fragmented, or reconstructed." *See id.* at *5 (citation omitted).

Here, Plaintiff has already agreed that Victory Phones does not have to produce the data on System A, which would have required developer work to obtain and thus appears to be "inaccessible." He seeks only the "accessible" data on System B. Victory Phones has represented that after some period of time, the data on System B is "archived," but "archived" data is still "accessible." The only burden Victory Phones has identified is the burden of looking through accessible data to find what is necessary, but that does not relieve a party of its discovery obligations. *See id.* at *4-5. Moreover, not only are the class calling records critical evidence as described above, the burden of producing them is certainly proportionate to the amount at stake in this case, a national class action lawsuit involving millions of calls seeking statutory damages of $500 to $1,500 per illegal call. Victory Phones is attempting to redefine Plaintiff's class in a self-serving way in an attempt to reduce the class's damages.

As to simply identifying the client on whose behalf the calls were made, Victory Phones refuses, asserting that the information is not relevant or proportional to the needs of the case. To be clear, there is no burden whatsoever associated with simply telling Plaintiff who the client is—Victory Phones knows and just doesn't want to disclose the information. But the identity of the client who paid for the calls at issue in this case is fundamental information that should have been disclosed in Victory Phones' initial disclosures, where Rule 26(a)(1) imposed upon Victory Phones the obligation to disclose individuals likely to have discoverable information it may use to support its defenses. Indeed, the client's name is certainly relevant as, among other reasons, Victory Phones has represented that its clients often provide it lists of phone numbers to call. Moreover, disclosure of the client will allow Plaintiff to identify another party potentially responsible for the calling conduct at issue in the case. The client should simply be identified.

Respectfully submitted,

**/s/ Brian K. Murphy**
Joseph F. Murray (327025)
Brian K. Murphy (admitted *pro hac vice*)
Jonathan P. Misny (admitted *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
         murphy@mmmb.com
         misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

G. Clinton Kelley
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
Telephone: 412.454.5599
E-mail: gckesq@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on February 17, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

**/s/ Brian K. Murphy**
Brian K. Murphy